**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **PHIL FELICE, DAWN FELICE,** | : | |
| **MICHAEL CAREY, STEVEN SPIVACK,** | : | |
| **LINDA SPIVACK, PAUL SPIVACK,** | : | |
| **KATHLEEN SPIVACK, FRANK HELD,** | : | **Civil Action No.** 1:23-cv-10138-JPO-KHP |
| **VINCENT RUTA, ET AL.** | : | |
| | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WESTPARK CAPITAL, INC.,** | : | |
| **ROBERT AINBINDER, MICHAEL** | : | |
| **AINBINDER, and NYIAX, INC.** | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**WESTPARK CAPITAL, INC.'S MOTION TO DISMISS IN LIEU OF ANSWER**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ............................................................................. 2

    a.   **Defendants** ........................................................................................... 2

    b.   **Each Plaintiff Purchased NYIAX in Separate Offerings with Different PPMs** ...... 2

    c.   **The FINRA Arbitration** ........................................................................ 5

III.  LEGAL ARGUMENT .................................................................................... 5

    A.   **FRCP RULE 12(b)(6) STANDARD** ..................................................... 6

    B.   **FRCP RULE 9(b) PLEADING STANDARDS** ...................................... 7

    C.   **COUNT I FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 IS TIME BARRED BY THE STATUTE OF REPOSE** .................... 7

    D.   **COUNT III FOR FRAUD MUST BE DISMISSED FOR AT LEAST SEVEN REASONS** ......................................................................................... 8

    E.   **COUNT IV FOR NEGLIGENT MISREPRESENTATION AND OMISSION MUST BE DISMISSED** ............................................................. 15

    F.   **COUNT V MUST BE DISMISSED BECAUSE THERE WAS NO FIDUCIARY RELATIONSHIP BETWEEN PLAINTIFFS AND WESTPARK CAPITAL INC.** .... 18

    G.   **COUNT VI & VII MUST BE DISMISSED BECAUSE THERE IS NO CONTRACT BETWEEN PLAINTIFFS AND WESTPARK CAPITAL INC.** ............ 19

    H.   **COUNTS VIII & X MUST BE DISMISSED BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION FOR VIOLATION OF FINRA RULES** .................. 21

    I.   **COUNT IX FOR NEGLIGENT HIRING AND RETENTION MUST BE DISMISSED BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED** ........ 22

    J.   **COUNT XI FOR NEGLIGENCE MUST BE DISMISSED BECAUSE THE CLAIM IS TIME-BARRED** ................................................................. 23

    K.   **CERTAIN PLAINTIFF'S INVESTMENTS WERE MADE DIRECTLY WITH NYIAX AND WERE APPROPRIATELY DISMISSED BY A FINRA PANEL AND THE DOCTRINE OF *RES JUDICATA* APPLIES TO THOSE INVESTMENTS** ...... 23

    L.   **THE COURT SHOULD GRANT THE MOTION TO DISMISS THE CLAIM FOR PUNITIVE DAMAGES** ................................................................. 25

IV.   CONCLUSION................................................................................................ 25

**TABLE OF AUTHORITIES**

**CASES**

*Adelphia Recovery Trust,* 634 F.3d 678, 694 (2d Cir. 2011)..............................................................24

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98 (2d Cir. 2012) ..........................................16

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) .....................7

*Bai Wen v. N.Y.C. Reg'l Ctr., LLC*, 2023 U.S. Dist. LEXIS 174158, 22-cv-7383-LJL (S.D.N.Y. Sept. 28, 2023) .................................................................................................................13

*Barrell v. Glen Oaks Vil. Owners, Inc.* (2006) 29 A.D. 3d 612, (2d Dept. 2006) ........................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) .......7

*Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 198 L. Ed. 2d 584 (2017) ...............8

*Canzona v. Atanasio*, 118 A.D.3d 837, (2nd Dept. 2014) ............................................................20

*Certain Underwriters at Lloyd's, London v. William M. Mercer, Inc.*, 801 N.Y.S.2d 231, 7 Misc. 3d 1008A, 2005 WL 841012, *12 (N.Y. Sup. Ct., 2005) ..................................................17

*Charles Schwab Corp v. Bank of Am. Corp.*, 883 F. 3d 68, (2d Cir. 2018).............................8, 11

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).....14

*CTS Corp. v. Waldburger,* 134 S. Ct. 2175, 2183, 189 L. Ed. 2d 62 (2014)...............................8

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, (2d Cir. 1996) ....................................................6

*Dodds v. Cigna Securities, Inc.,* 12 F.3d 346 (2d Cir. 1993)....................................................10

*Doe v. Wesleyan Univ.*, 2021 WL 664010, 3:19-cv-01519 (JBA) (D. Conn. Feb. 19, 2021) ......17

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190 (2d Cir. 2010) ..................24

*EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621 (2d Cir. 2007) ...........................24

*Espie v. Murphy*, 35 A.D.3d 346, 347-48, 825 N.Y.S.2d 537 (N.Y. App. Div., 2d Dep't, 2006) 17

*Fandy Corp. v. Lung-Fong Chen*, 262 A.D.2d 352, 691 N.Y.S.2d 572 (N.Y. App. Div., 2d Dep't, 1999) .................................................................................................................................16

*Fecht v. Price Co.*, 70 F.3d 1078, 1080, n.1 (9th Cir. 1995) .......................................................7

*Galestan v. OneMain Holdings*, Inc., 348 F. Supp. 3d 282, (S.D.N.Y. 2018) ............................14

*Gutkin v. Siegal*, 85 A.D.3d 687, 926 N.Y.S.2d 485 (1st Dep't 2011)........................................10

*Halkin v. VeriFone Inc.* (*In re VeriFone Sec. Litig.*), 11 F.3d 865, (9th Cir. 1993) ......................7

*Hammer v. Supreme Court of the United States*, 2005 WL 1946038 (S.D.N.Y. Aug. 11, 2005) .. 6

*Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292, (S.D.N.Y. 2018)..........................21

*Hoskins v. Titan Value Equities Grp., Inc.*, 252 Conn. 789, 749 A.2d 1144 (2000) ...................21

*Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 200 (3d Cir. 1990) ..................................21

*In re Ehang Holdings Ltd. Secs. Litig.*, 646 F. Supp. 3d 443 (S.D.N.Y. 2022)...........................14

*In re Infonet Servs.*, 310 F. Supp. 2d 1106 (C.D.C.A. 2003)........................................................7

*In re Teltronics Servs., Inc.*, 762 F.2d 185 (2d Cir. 1985).........................................................24

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ......................................................22

*Jordan v. Metro. Life Ins. Co.*, 2004 WL 1752822 (S.D.N.Y. Aug. 4, 2004) .............................24

*Jordan v. UBS AG*, 11 A.D.3d 283 (1st Dept. 2004)..................................................................19

*Joseph v. Athanasopoulos*, 648 F.3d 58 (2d Cir. 2011)..............................................................24

*Kaufman v. Cohen*, 307 A.D.2d 113 (1st Dept. 2003)................................................................20

*Kaufman v. Guest Capital, L.L.C.*, 386 F. Supp. 2d 256 (S.D.N.Y 2005) .................................10

*Lee v. Yale Univ.* 624 F. Supp. 3d 120 (D. Conn. 2022) ............................................................21

*Lee v. Yale Univ.*, 624 F. Supp. 3d 120 (D. Conn. 2022) ................................................ 18

*Levine v. Prudential Bache Properties, Inc.,* 855 F. Supp. 924 (N.D. Ill. 1994) ................ 11

*Lobaito v. Chase Bank*, 2012 WL 3104926 (S.D.N.Y. July 31, 2012) .............................. 25

*Loengard v Santa Fe Indus.*, 70 N.Y.2d 262, 519 N.Y.S.2d 801, 514 N.E.2d 113 [1987] .......... 20

*Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12 (S.D.N.Y. 2016) .................... 14

*Matana v. Merkin*, (2013) 957 F. Supp. 2d 473 ................................................ 23

*North v. Smarsh, Inc.* 265 F. Supp. 3d 71 (D.D.C. 2017) ...................................... 22

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804 (2nd Dept. 2011) ....... 19

*Papasan v. Allain* (1986) 478 U.S. 265 ....................................................... 6

*Pasternack v. Shrader*, 863 F.3d 162 (2d Cir. 2017) .......................................... 9

*Perl v. Smith Barney Inc.*, 230 A.D.2d 664 (1st Dept. 1996) .................................. 19

*Quiroz v. U.S. Bank Nat. Ass'n,* No. 10-CV-2485(KAM)(JMA), 2011 WL 2471733, (E.D.N.Y. May 16, 2011) .......................................................................... 25

*Saboundjian v Bank Audi [USA]*, 157 A.D.2d 278, 556 N.Y.S.2d 258 [1990]) ..................... 19

*Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth.,* 844 F.3d 414 (4th Cir. 2016) .......................................................................................... 22

*See Merck & Co. Inc. v. Reynolds*, 559 U.S. 633, 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010) ...... 8

*Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363 (S.D.N.Y. 2004) ................... 23

*Sharon B. v. Reverend S.*, 244 A.D.2d 878, 665 N.Y.S.2d 139 (N.Y. App. Div. 1997) ............ 23

*Snapp v. Lincoln Fin. Secs. Corp.*, 2018 WL 1144383, (W.D.Va Mar. 2, 2018) ................... 22

*Spasiano v. Provident Mut. Life Ins. Co.,* 2 A.D.3d 1466 (4th Dept. Dec. 31, 2003) ........... 25

*SRM Global Master Fund Ltd. P'ship v. Bear Stearns Cos., LLC*, 829 F.3d 173 (2d Cir. 2016) ... 8

*Stack Electric Inc. v. DiNardi Construction Corp.*, 161 A.D.2d 416, 555 N.Y.S.2d 346 (1st Dep't 1990) ........................................................................... 26

*Sutton v Hafner Valuation Group, Inc.*, 115 A.D.3d 1039 (3rd Dept. 2014) ..................... 9

*Thompson v. Cnty. of Franklin*, 15 F.3d 245 (2d Cir. 1994) ................................... 25

*Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413 (11th Cir. 1983) ................ 21

*Valelly v. Merrill Lynch, Pierce, Fenner and Smith Inc.,* 464 F. Supp. 3d 634 (S.D.N.Y 2020). 22

*Von Hoffmann v. Prudential Ins. Co. of Am.*, 202 F. Supp. 2d 252 (S.D.N.Y. 2002) ............. 16

*Wimmer v. Pratt Institute,* 405 N.Y.S. 2d 707 (1978) ......................................... 22

**STATUTES**

15 U.S.C. § 78j(b) ............................................................................ 8

28 U.S.C. § 1658(b)(2) ........................................................................ 8

FRCP Rule 9(b) .......................................................................... 7, 9, 11

N.Y.C.P.L.R § 214(4) ......................................................................... 23

N.Y.C.P.L.R. 214(5) .......................................................................... 22

NY CLS CPLR § 213(6) ......................................................................... 16

NY CLS CPLR § 213(8) ......................................................................... 10

Rule 12(b)(6) ............................................................................. 7, 25

**REGULATIONS**

17 C.F.R § 240.10b-5 ......................................................................... 8

WestPark Capital, Inc. ("WestPark"), by and through its counsel, respectfully submits this Memorandum of Points and Authorities in support of its motion to dismiss the complaint ("CL") brought against WestPark, Robert Ainbinder ("R. Ainbinder"), Michael Ainbinder ("M. Ainbinder"), and NYIAX, Inc. ("NYIAX") by Phil Felice, Dawn Felice, Michael Carey, Steven Spivack, Linda Spivack, Paul Spivack, Kathleen Spivack, Frank Held, and Vincent Ruta (collectively "Plaintiffs").

## I.      INTRODUCTION

Plaintiffs' claims against WestPark arise out of investments Plaintiffs made in NYIAX, a start-up created to connect buyers and sellers of media by enabling secure and precise transactions. Between 2016 and 2018, WestPark acted as placement agent to NYIAX and the Plaintiffs invested in NYIAX after having received detailed, extensive warnings about the risks inherent to these investments set out in three private placement memoranda ("PPMs").

All of the investments made when WestPark was placement agent for NYIAX were between 2016 and 2018, more than five (5) years prior to the date Plaintiffs' filed an arbitration before the Office of Dispute Resolution of the Financial Industry Regulatory Authority ("FINRA") on March 1, 2023 (which tolled the statute of limitations pursuant to FINRA Rule 12206(c)).[1] Because of this, most of Plaintiffs' claims are time-barred. Moreover, for the investments made between 2020 and 2022, the FINRA Arbitration Panel issued a final order fully dismissing all the claims associated with these investments against WestPark on the grounds that these 2020-2022 investments were made directly through NYIAX and not with

---

[1] "[W]hen a claimant files a statement of claim in arbitration, any time limits for the filing of the claim in court will be tolled while FINRA retains jurisdiction of the claim."

WestPark. This order is a final, binding arbitration award and the doctrine of *res judicata* prohibits the re-litigation of these claims.

## II.    STATEMENT OF FACTS

### a.  Defendants

WestPark is a broker-dealer registered with the United States Securities and Exchange Commission ("SEC") and a FINRA member firm. *See* CL ¶ 65. At all relevant times, WestPark was and is in good standing with both the SEC and FINRA. *See* Request for Judicial Notice ("RJN") Ex. A (WestPark FINRA Broker Check Report). [2] NYIAX is a Delaware corporation that maintains its corporate offices in New York. *See* CL ¶ 13.  R. Ainbinder and M. Ainbinder were not registered with WestPark during the timeframe of investments made after 2019.  *See* RJN Ex. B (R. Ainbinder FINRA Broker Check Report at p. 5) & Ex. C (M. Ainbinder FINRA Broker Check Report at p. 5).  R. Ainbinder was registered with WestPark from November 2015 to August 2019 and then briefly from November 2022 to January 2023. *See* CL ¶ 69 and RJN Ex. B (R. Ainbinder FINRA Broker Check Report at p. 5). M. Ainbinder was registered with WestPark from November 2015 to June 2018 and then again from October 2018 to June 2019. *See* CL ¶ 76 and RJN Ex. C (M. Ainbinder FINRA Broker Check Report at p. 5).

### b.  Each Plaintiff Purchased NYIAX in Separate Offerings with Different PPMs

Plaintiffs' claims arise out of a series of different offerings that started in 2016 and finished in 2022. *See* CL ¶ 20.  During this time frame, WestPark only acted as the placement

---

[2] Apart from being irrelevant, Paragraph 67 of the Complaint is wrong as WestPark is not subject to FINRA Rule 3170 and that FINRA Rule relates only to having a number of registered representatives who had worked at a firm that had been expelled.  When WestPark hired the representatives, that other firm was in good standing and then was later expelled for reasons that had nothing to do with the representatives that WestPark had hired, subjecting WestPark to the taping rule through no fault of its own.

agent[3] for NYIAX from 2016 to January 2018, when R. Ainbinder was registered with WestPark. *See* RJN Ex. B (R. Ainbinder Broker Check Report at p. 5). During the time that WestPark was the placement agent, Plaintiffs made thirteen investments in NYIAX. *See* CL ¶ 20. Years later, Steven and Linda Spivak and Paul and Kathleen Spivak made six additional investments directly with NYIAX in 2020, 2021, and 2022. *See* CL ¶ 20.

The private placement offerings made when WestPark was the placement agent were sold pursuant to three different Private Placement Memorandums ("PPMs"), dated May 26, 2016, January 24, 2017, and December 7, 2017. *See* RJN Ex. D (May 26, 2016 PPM), Ex. E (January 24, 2017 PPM) & Ex. F (December 7, 2017 PPM).

(i)     *The PPMs Disclosed That the Investment Was Speculative and Had a High Degree of Risk*

Each of the PPMs plainly disclosed warnings that the investment was speculative and involved a high degree of risk as well as pages of risk factors associated with an investment in NYIAX, warning Plaintiffs of the risks of making their investments. *Compare* CL ¶ 95 *with* (i) RJN Ex. D (May 26, 2016 PPM) at p. 2 ("The shares offered hereby are highly speculative and an investment in the shares involves a high degree of risk and immediate and substantial dilution from the offering price"); at p. 8 ("The securities offered hereby are speculative and involve a high degree of risk and should not be purchased by anyone who cannot afford the loss of his entire investment") & at p. 15, *et seq.* (Risk Factors), *and* RJN Ex. E (January 24, 2017 PPM), at p. 2 ("The shares offered hereby are highly speculative, and an investment in the shares involves, a high degree of risk and immediate and substantial dilution from the offering price");

---

[3] In paragraph 77, Plaintiffs erroneously state that WestPark was the "underwriter," which only applies to Initial Public Offerings not private placements, for which a brokerage firm acts as a placement agent.

at p. 8 ("The securities offered hereby are speculative and involved a high degree of risk and should not be purchased by anyone who cannot afford the loss of his or her entire investment") & at p. 15, *et seq.* (Risk Factors) *and* RJN Ex. F (December 7, 2017 PPM) at p. 2 ("The units offered hereby are highly speculative, and an investment in the units involves a high degree of risk and immediate and substantial dilution from the offering price"); at p. 8 ("The securities offered hereby are speculative and involved a high degree of risk and should not be purchased by anyone who cannot afford the loss of his or her entire investment") & at p. 15, *et seq.* (Risk Factors).

  *(ii)*  *The PPMs Disclosed That NYIAX Was Subject to Regulation by the CFTC and the*

     *SEC*

  In the Risk Factors, each of the PPMs disclosed that NYIAX would be subject to regulation by the Commodity Futures Trading Commission ("CFTC") and the United States Securities and Exchange Commission ("SEC"), contrary to Plaintiffs' allegation in paragraph 93. The following Risk Factor appears in all three PPMs:

> **Risk Relating to Possible Regulation and Supervision**
> The Company's sale of advertising may become subject to regulation and supervision by the United States Commodity Futures Trading Commission ("CFTC") and the United States Securities and Exchange Commission ("SEC"). In the event that the sale of advertising as contemplated by NYIAX, is determined to be a commodity under the Commodity Exchange Act, NYIAX would become subject to regulation by the CFTC, including its registration, compliance and reporting requirements. In addition, NYIAX's sale of advertising on the NASDAQ X-stream platform may also be subject to SEC regulation and compliance requirements with respect to trading activities and market operations. The Company'sinventory capabilities on the NASDAQ X-stream platform could be adversely affected in the event it becomes subject to regulatory oversight.

*Compare* CL ¶ 93 *with* RJN Ex. D (May 26, 2016 PPM) at p. 21; Ex. E (January 24, 2017 PPM), at p. 21; & Ex. F (December 7, 2017 PPM) at p. 21.

*(iii)    The PPMs Disclosed WestPark's Compensation*

Moreover, each of the PPMs properly disclosed Westpark's commission for each offering. *Compare* CL ¶¶ 78 & 111 *with* RJN Ex. D (May 26, 2016 PPM) at p. 11; Ex. E (January 24, 2017 PPM), at p. 10; & Ex. F (December 7, 2017 PPM) at p. 10.

*(iv)    Investors Were Instructed Not to Rely on Oral Statements*

Each PPM stated that investors should only rely on the information in the Memorandum and "[w]e have not authorized anyone to provide you with information different from that contained in the Memorandum. *See* RJN Ex. D (May 26, 2016 PPM) at p. 4; Ex. E (January 24, 2017 PPM), at p. 4; & Ex. F (December 7, 2017 PPM) at p. 4.

*(v)    The PPMs Made Extensive Disclosures About NYIAX's Relationship with NASDAQ*

The PPMs disclosed NYIAX's relationship with Nasdaq. *Compare* CL ¶¶ 101-102 *with* RJN Ex. D (May 26, 2016 PPM) at p. 25-27; Ex. E (January 24, 2017 PPM), at p. 23-25; & Ex. F (December 7, 2017 PPM) at p. 24-25. The PPMs also have a Risk Factor section devoted to risks related to their relationship with NASDAQ.

### c.  The FINRA Arbitration

On March 1, 2023, Plaintiffs filed a Statement of Claim ("SOC") with FINRA against NYIAX, WestPark, R. Ainbinder, and M. Ainbinder. The SOC alleged the same claims in nearly identical language as the Complaint. *See* RJN Ex. G (FINRA SOC). On October 17, 2023, the FINRA Arbitration Panel issued a final, binding order holding that all claims related to the investments made in 2020, 2021, and 2022 are dismissed because the investments were made directly through NYIAX and not through WestPark. *See* CL ¶ 20 & RJN Ex. H (Final FINRA Order).

### III.    LEGAL ARGUMENT

### A. FRCP RULE 12(b)(6) STANDARD

Under Federal Rule of Civil Procedure ("FRCP") Rule 12(b)(6), dismissal of a complaint may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Hammer v. Supreme Court of the United States*, 2005 WL 1946038 (S.D.N.Y. Aug. 11, 2005) at *1. Although a court must assume that Plaintiffs' factual allegations are true, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Papasan v. Allain* (1986) 478 U.S. 265, 286. A complaint which consists of conclusory allegations unsupported by factual assertions fails the standard of FRCP Rule 12(b)(6). S*ee De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996). *See also Halkin v. VeriFone Inc.* (*In re VeriFone Sec. Litig.*), 11 F.3d 865, 868 (9th Cir. 1993) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").[4]

The United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 571-72, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Under *Twombly*, a plaintiff must provide the grounds of his entitlement to relief, a

---

[4] Moreover, a court may consider certain documents in addition to the complaint, including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Fecht v. Price Co.*, 70 F.3d 1078, 1080, n.1 (9th Cir. 1995) (full text of company's disclosure documents and securities analysts' reports quoted in complaint were properly considered), *cert. denied*, 517 U.S. 1136 (1996). Consideration of such documents does not convert the motion to dismiss into a motion for summary judgment. *Id.*; *see also In re Infonet Servs.*, 310 F. Supp. 2d 1106 (C.D.C.A. 2003) at 1116 n.10 ("a court may take judicial notice of matters of public record outside the complaint without converting a motion to dismiss into a motion for summary judgment").

burden that "requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do" *Twombly*, 550 U.S. at 555.  Facts that are "merely consistent with" a defendant's liability, are insufficient to meet this burden. *Iqbal*, 129 S. Ct. at 1949. Instead, a complaint must contain facts supporting "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Moreover, assumptions and conclusions "couched as [] factual allegation[s]" are not entitled to a presumption of truth on a motion to dismiss. *Twombly*, 550 U.S. at 555.

## B.  FRCP RULE 9(b) PLEADING STANDARDS

Where a Plaintiff asserts that fraud took place, the party has to "state with *particularity* the circumstances constituting fraud or mistake" FRCP 9(b) (*emphasis added*).  Without pleading with particularity, Plaintiff's complaint cannot survive a dismissal motion challenge. Under Rule 9(b), a fraud complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *See Charles Schwab Corp v. Bank of Am. Corp.*, 883 F. 3d 68, 96 (2d Cir. 2018). Plaintiffs therefore must set forth what is false or misleading about a statement, and why it is false. The Complaint falls far short of this high standard.

## C.  COUNT I FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 IS TIME BARRED BY THE STATUTE OF REPOSE

Count I of the Complaint, referenced in ¶¶ 147-151, should be dismissed because the cause of action is time-barred under the statute of repose. Claims brought under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R § 240.10b-5 promulgated thereunder, are subject to a five-year statute of repose.  The only investments made at WestPark (2016-2018) are time-barred by the statute of repose.  Statutes of

repose "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time. For this reason, statutes of repose begin to run on the date of the last culpable act or omission of the defendant." *Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049, 198 L. Ed. 2d 584 (2017). Statutes of repose cannot be tolled. *See id*. at 2049-50 ("In light of the purpose of a statute of repose, [it is] in general not subject to tolling); *CTS Corp. v. Waldburger,* 134 S. Ct. 2175, 2183, 189 L. Ed. 2d 62 (2014). The relevant periods in which a plaintiff must bring a Section 10(b) claim are found at 28 U.S.C. § 1658(b)(2), which is the statute of repose. *See Merck & Co. Inc. v. Reynolds*, 559 U.S. 633, 638, 648-53, 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010); *SRM Global Master Fund Ltd. P'ship v. Bear Stearns Cos., LLC*, 829 F.3d 173, 176 (2d Cir. 2016) (*cert. denied*, 137 S. Ct. 2326 (2017)) (statute of repose is "an absolute bar on a defendant's temporal liability); *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017) (holding that securities fraud claims are time-barred under five-year statute of repose and holding that "the plaintiff's discovery of the injury is irrelevant for a statute of repose"); *SRM Global Master Fund Ltd. P'ship,* 829 F. 3d at 177 ("§1658(b)(2) is not subject to equitable tolling").  Therefore, the Section 10(b) and Rule 10b-5 claim in Count I must be dismissed.

### D.  COUNT III FOR FRAUD MUST BE DISMISSED FOR AT LEAST SEVEN REASONS

Count III for Fraud must be dismissed for at least seven reasons.  "The elements of fraud include a misrepresentation that is false and that the defendant knows is false, made to induce the other party to rely on it, justifiable reliance on the misrepresentation by the other party, and injury." *Sutton v Hafner Valuation Group, Inc.*, 115 A.D.3d 1039, 1041 (3rd Dept. 2014).  First, certain of the alleged misrepresentations are barred by the statute of limitations. Second, they are not pled with the specificity required by FRCP Rule 9(b).  Third, the allegedly

fraudulent misrepresentations and omissions were in fact disclosed to the Plaintiffs in the PPMs. Fourth, certain of the statements cannot have been justifiably relied upon. Fifth, certain of the alleged statements were not material. Sixth, to be actionable as a fraudulent misrepresentation, it has to be known to be false at the time it is made. Seventh, all alleged statements made after R. Ainbinder left WestPark cannot be attributed to WestPark in any way. Parsing the jumbled complaint demonstrates that there are no viable allegations against WestPark for fraud and the firm's motion to dismiss Count III must be granted.

*First*, certain of the allegedly fraudulent statements about the investments are barred by the statute of limitations. All investments in the different private placement offerings were made pursuant to different PPMs and were wholly separate offerings. *See* RJN Ex. D (May 26, 2016 PPM); Ex. E (January 24, 2017 PPM); & Ex. F (December 7, 2017 PPM). The statute of limitations for a fraud claim in New York is the greater of six years or two years from the time the plaintiff could with reasonable diligence have discovered it. *See* NY CLS CPLR § 213(8).

In the Complaint, all of the alleged fraudulent statements in Paragraph 88, which specifies a date of March 2016 and Paragraph 91, which specifies a date of early 2016, and then in Paragraphs 92-104, set out a series of time-barred allegedly false statements. The FINRA Arbitration Statement of Claim was filed on March 1, 2023 (which tolled the running of the statutes of limitations during the pendency of the action). *See* RJN, Ex. G (FINRA SOC). Thus, all claims regarding these alleged statements were time barred in March 2022. Therefore, none of these statements can serve as a viable basis for a fraud claim and the fraud claim must be dismissed as to all of these allegedly false statements.

New York's "two-year discovery rule" does not apply or extend the statute of limitations. To determine when the fraud was discovered for purposes of the statute of limitations, New

9

York courts use the following test: "Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Gutkin v. Siegal*, 85 A.D.3d 687, 688, 926 N.Y.S.2d 485 (1st Dep't 2011). There are no allegations of reasonable diligence in the Complaint.

The oral statements conflicted with the disclosures in the PPMs. *See* Section II.B.(i-v), *supra*. The statements in the PPMs that were inconsistent with the alleged oral statements put the Plaintiffs on inquiry notice. *See*, *e.g.*, *Kaufman v. Guest Capital, L.L.C.*, 386 F. Supp. 2d 256, 270 (S.D.N.Y. 2005) (citing *Dodds v. Cigna Securities, Inc.,* 12 F.3d 346, 350 (2d Cir. 1993) (prospectus detailing risk factors put investor of ordinary intelligence on inquiry notice as a matter of law); *Levine v. Prudential Bache Properties, Inc.,* 855 F. Supp. 924, 933 n.3 (N.D. Ill. 1994) (remarking that a "securities seller's written disclosures trump any contrary oral statements" and that plaintiffs cannot avoid the minimum step of reading prospectuses)). Not reading the PPMs is not a defense. Therefore, the inquiry notice started at the time of the investment.

At the very latest, because the thrust of all of the fraud allegations is that NYIAX would have an IPO eighteen months after the Plaintiffs invested, which did not occur, this put all of the Plaintiffs on inquiry notice as to the statements made to them about the IPO and any success or profits that would have been had and required them to engage in reasonable diligence, which they do not allege that they did and did not do. The Plaintiffs were all on "inquiry notice" of their fraud claims and therefore, it is the six-year rule, not the two-year rule, that governs. In paragraph 119, plaintiffs admit that they knew there was no IPO after eighteen months. All of

10

the statements made before the expiration of the six-year statute of limitations are time barred and no tolling applies.

*Second*, Count III must be dismissed on the grounds that they are not pled with the requisite specificity under FRCP Rule 9(b). Where a Plaintiff asserts that fraud took place, the party has to "state with *particularity* the circumstances constituting fraud or mistake" Fed. R. Civ. P. 9(b) (*emphasis added*). Without pleading with particularity, Plaintiff cannot prove the elements of his claims at the hearing. Under Rule 9(b), a fraud complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *See Charles Schwab Corp v. Bank of Am. Corp.*, 883 F. 3d 68, 96 (2d Cir. 2018). Plaintiffs therefore must set forth what is false or misleading about a statement, and why it is false. The Complaint falls far short of this standard.

There are thirteen plaintiffs and with one exception (that is barred by the statute of limitations), plaintiffs entirely fail to allege to whom the allegedly fraudulent statement was made or when it was made. The only paragraphs that specify who the Ainbinders allegedly spoke to, paragraphs 79-91, which merely describe how the plaintiffs knew the Ainbinders and that they played in a band together, do not contain any alleged misstatements. The paragraphs that contain the allegedly fraudulent statements merely say that the statements were made to the "Plaintiffs." There are thirteen plaintiffs and nowhere does the complaint allege to which plaintiffs the alleged statements were made, when they were made, or where they were made.

With regard to the alleged misrepresentations set forth in paragraphs 92, 94, 96, 97, FRCP Rule 9(b) is violated because Plaintiffs fail to specify why those alleged statements were false. Thus, FRCP Rule 9(b) is not satisfied and Count III must be dismissed.

*Third*, the allegedly fraudulent misrepresentations and omissions were in fact disclosed to the Plaintiffs in the PPMs. *See* Sections II.B.(i-v), *supra*. Plaintiffs were told in every PPM that the investment was highly speculative and involved a high degree of risk and should not be purchased by anyone who cannot afford the loss of his entire investment. The PPMs also contained risk factors, including one on "Risks Relating to Our Relationship with NASDAQ" and "Risks Relating to Possible Regulation and Supervision," specifically including the CFTC and the SEC. Therefore, the alleged misrepresentation in paragraphs 93, 101, and 103 were disclosed in the offering materials to investors, who have a duty to read the offering materials and are legally held liable for having knowledge of the risks disclosed therein. "New York law assumes a reasonably diligent investor would have requested and reviewed the remainder of the subscription agreement and offering memorandum." *Bai Wen v. N.Y.C. Reg'l Ctr., LLC*, 2023 U.S. Dist. LEXIS 174158, *53, 22-cv-7383-LJL (S.D.N.Y. Sept. 28, 2023) (see Compendium of Cases).

The alleged fraudulent statement set forth in paragraph 78 of the Complaint, that the compensation to WestPark was undisclosed to the Plaintiffs not only was disclosed in every private placement offering memorandum, the allegation is contradicted in Plaintiffs' own Complaint in Paragraph 99. Therefore, there can be no liability for WestPark based on this statement and the motion to dismiss must be granted.

*Fourth*, certain of the statements cannot have been justifiably relied upon. Plaintiffs' allegation that they were allegedly told that the investment in the pre-IPO stock was "risk free" cannot have been justifiably relied on. Even Plaintiffs' own Complaint in paragraph 98 states "In reality, as is the case for any pre-IPO investment, an investment in NYIAX was highly speculative, and bore the risk that the investors would lose all of their principal." In addition,

there are bolded capitalized disclosures to this effect in all of the PPMs.  *See* Section II.B.(i), *supra*.  Therefore, the allegation in paragraphs 95 and 160 that the investment would "carry very little risk" and was "virtually risk free" cannot have been justifiably be relied on.

Moreover, any statements made after the date of the investment cannot have been relied on for the investment decision and thus paragraphs 128-144 are inactionable because they could not have been relied on.

Finally, the Plaintiffs were explicitly told, in writing in the PPMs, that they were not to rely on anything except the Memorandums.  *See* Section II.B.(iv), *supra*.  Therefore, any alleged reliance on oral statements was not reasonable or justified.

***Fifth***, certain of the alleged statements were not material.  The statement in paragraph 95 that "the only thing that could stop them from generating a significant profit on NYIAX if they invested was a 'nuclear holocaust'" is inactionable puffery.  "[M]any of the challenged statements are inactionable expressions of corporate optimism, *i.e.*, puffery. The Second Circuit has held that statements that are too vague, nonspecific, or are merely reflections of corporate optimism are not actionable. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014); *Galestan v. OneMain Holdings*, Inc., 348 F. Supp. 3d 282, 297-98 (S.D.N.Y. 2018).  Moreover, the inquiry in determining whether a statement amounts to puffery is "not whether the topic of a statement was a key to corporate success, but the nature of the specific statement and whether it concretely assured investors of anything." *Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 29 (S.D.N.Y. 2016); *In re Ehang Holdings Ltd. Secs. Litig.*, 646 F. Supp. 3d 443, 461-462 (S.D.N.Y. 2022) ("Statements about EHang's vehicles and regulatory approvals being "industry leading," "first in the world," or "of great significance" are statements of optimism that are too vague for a reasonable investor to rely

upon. […] Similarly, statements that EHang's vehicles had "achieve[d] commercialization" are inactionable, because they are too nonspecific to concretely assure investors of anything.").

For example, the alleged statement by Michael Ainbinder that NYIAX in paragraph 93 would be operating in "the wild west" is a statement of optimism too vague for an investor to rely on and too nonspecific to concretely assure investors of anything, so it is inactionable puffery. Similarly, the statement in paragraph 95 that the "only thing that could stop them from generating a significant profit on NYIAX if they invested was a 'nuclear holocaust' is puffery for the same reasons. Paragraph 96, which says that the investor will be able to "buy an island" is also inactionable puffery for the same reasons.

*Sixth*, to be actionable as a fraudulent misrepresentation, it has to be known to be false at the time it is made and known to be false to the speaker. The speaker must have scienter. There are no allegations that R. Ainbinder knew that the five-year forecast described in paragraph 113 was false when made, therefore, the alleged fraudulent forecast is not actionable. The text messages in CL EX 3 are all with only one plaintiff, Phil Felice, and R. Ainbinder did not work at WestPark at that time so there is no cause of action for fraud against WestPark for the text messages. There are also no allegations that the statements about when the IPO might take place were known to be false when they were made by R. Ainbinder. While Plaintiffs allege that the statements later became false, there are no allegations that R. Ainbinder knew the statements were incorrect at the time he made them, and thus the alleged misrepresentations in paragraphs 138-139 and 142-143 are not actionable fraud.

*Seventh*, all alleged statements made after R. Ainbinder left WestPark cannot be attributed to WestPark in any way. R. Ainbinder resigned from WestPark in August 2019. *See* RJN, Ex. B (R. Ainbinder FINRA Broker Check – Registration History), at p. 5. Any alleged

14

fraudulent statements made by R. Ainbinder after August 2019 cannot be attributed to WestPark. While he returned to WestPark from November 2022 to January 2023, there are no allegations in the Complaint of any sales of NYIAX stock to the Plaintiffs and no allegations of any statements being made during that time.

For the statements in paragraph 160 and the statement in paragraph 128 from a text message regarding cutting executive salaries, the statement was made after R. Ainbinder left WestPark. All of the text messages in CL EX 3 were sent when R. Ainbinder was not registered with WestPark and therefore do not form a viable basis for a fraud claim against WestPark. Therefore, paragraphs 126-144 cannot form the basis for a fraud claim against WestPark because R. Ainbinder did not work at WestPark.

M. Ainbinder was registered with WestPark from 2015 through 2021. He is not alleged to have made any fraudulent statements during that time. The allegation against him is in paragraph 91 of the Complaint, which merely says that he made an "initial solicitation" but fails to attribute any false statement to him.

### E. COUNT IV FOR NEGLIGENT MISREPRESENTATION AND OMISSION MUST BE DISMISSED

The cause of action for negligent misrepresentation and omission must be dismissed because Plaintiffs have not adequately pled facts supporting all of the elements of the claim and certain of the statements are barred by the statute of limitations. Under New York law, "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the

15

plaintiff reasonably relied on it to his or her detriment." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012).

**First**, certain of the allegedly negligent misstatements about the investments are barred by the statute of limitations. The statute of limitations for negligent misrepresentation is six years. *See* NY CLS CPLR § 213(6). "A cause of action based on negligent misrepresentation accrues on the date of the alleged misrepresentation which is relied upon by the plaintiff." *See Fandy Corp. v. Lung-Fong Chen*, 262 A.D.2d 352, 353, 691 N.Y.S.2d 572 (N.Y. App. Div., 2d Dep't, 1999); *see also Von Hoffmann v. Prudential Ins. Co. of Am*., 202 F. Supp. 2d 252, 263 (S.D.N.Y. 2002) (same); *Espie v. Murphy*, 35 A.D.3d 346, 347-48, 825 N.Y.S.2d 537 (N.Y. App. Div., 2d Dep't, 2006); *Certain Underwriters at Lloyd's, London v. William M. Mercer, Inc*., 801 N.Y.S.2d 231, 7 Misc. 3d 1008A, 2005 WL 841012, *12 (N.Y. Sup. Ct., 2005) ("A cause of action for negligent misrepresentation or constructive fraud is also governed by a six-year statute of limitations, although the two-year discovery rule does not apply.")."

In the Complaint, all of the alleged negligent statements in Paragraph 88, which specifies a date of March 2016 and Paragraph 91, which specifies a date of early 2016, and then in Paragraphs 92-104 set out a series of time-barred allegedly false statements. The FINRA SOC was filed on March 1, 2023. *See* RJN, Ex. G (FINRA SOC). Thus, all claims regarding these alleged statements were time barred in March 2022. Therefore, none of these statements can serve as a viable basis for a claim and the negligent misrepresentation claim must be dismissed as to all of these allegedly negligent statements.

**Second**, Plaintiffs fail to allege any facts that particularize that WestPark "should have known" the alleged negligent misstatements were incorrect. They do not allege a single fact that would show in any way a basis for the assertion that WestPark should have known any alleged

negligent misstatement in the Complaint was incorrect.  Even in the allegations from paragraph 165-170, they do not make a single allegation that WestPark knew that WestPark should have known that any of the statements were incorrect.

"Plaintiffs must allege <u>facts</u> which, if true, would bear that conclusion out. *See Doe v. Wesleyan Univ.*, 2021 WL 664010, at \*12, 3:19-cv-01519 (JBA) (D. Conn. Feb. 19, 2021) (dismissing negligent misrepresentation claim where "Plaintiff makes no claims that [defendant] knew or should have known that its Handbook would not be honored by its own officials at the time it  was issued or that [defendant] knew or should have known that the promises were false at the time it wrote and published Handbook[]");

In *Lee v. Yale Univ.*, 624 F. Supp. 3d 120, 142-143 (D. Conn. 2022), the Court dismissed the claim for negligent misrepresentation and explained:  "In considering a motion to dismiss, the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." "Plaintiff has not alleged any <u>facts </u>that would support her conclusory assertion that Yale knew or should have known that its statements were false at the time they were made." *Lee*, 624 F. Supp. 3d at 142-143.

***Third***, the allegedly negligent misrepresentations and omissions were in fact disclosed to the Plaintiffs, or the Plaintiffs were warned in the Risk Factors, in the PPMs, rendering reliance not reasonable.  *See* Sections II.B.(i-v), *supra*.

***Fourth***, certain of the statements cannot have been reasonably relied upon.  Any Statements made after the date of the investment cannot have been relied on for the investment decision and thus paragraphs 128-144 are inactionable because they could not have been relied on.  Some of the statements are inactionable puffery.  *See* Section II.D., Fraud, *supra*.

*Fifth*, all alleged statements made after R. Ainbinder left WestPark cannot be attributed to WestPark in any way. R. Ainbinder resigned from WestPark in August 2019. *See* RJN, Ex. B (R. Ainbinder Broker Check – Registration History), at p. 5. Any alleged negligent statements made by R. Ainbinder after August 2019 cannot be attributed to WestPark.

### F. COUNT V MUST BE DISMISSED BECAUSE THERE WAS NO FIDUCIARY RELATIONSHIP BETWEEN PLAINTIFFS AND WESTPARK CAPITAL INC.

Plaintiffs' claim against WestPark for breach of fiduciary duty must be dismissed because WestPark was not in a fiduciary relationship with Plaintiffs, any alleged breach has not proximately caused any damages, and the claims are barred by the statute of limitations.

To establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff. *See Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 807 (2nd Dept. 2011).

Absent agreement to the contrary, not present here, a broker does not owe fiduciary duties to a purchaser of securities (citation omitted) excepting executing trades in accordance with the customer's instructions (*see Saboundjian v Bank Audi* [*USA*], 157 A.D.2d 278, 283, 556 N.Y.S.2d 258 [1990]); *Jordan v. UBS AG*, 11 A.D.3d 283, 284 (1st Dept. 2004)"; *Perl v. Smith Barney Inc.*, 230 A.D.2d 664, 666 (1st Dept. 1996) ("[A] broker does not, in the ordinary course of business, owe a fiduciary duty to a purchaser of securities.") (citation omitted). There are also no allegations that WestPark acted as an investment adviser for the Plaintiffs or had any discretionary authority.

The concept that the plaintiffs lacked experience in securities offerings who placed their trust and confidence in defendants (CL ¶ 175) is directly contradicted by the subscription agreements they incorporate in CL ¶¶ 105-108; 115-118, a sample of which is attached as an

18

Exhibit to the RJN.  *See* RJN Ex. I (Frank Held Subscription Agreement), pp. 3-7.  Every investor made representations and covenants in Section 2, all of which directly contradict their attempt now to manufacture a fiduciary relationship.  In representation 2.21, Special "Bad Boy" Risk Disclosures, the Plaintiffs represented and covenanted that "The undersigned has not relied on the Placement Agent, WestPark Capital, Inc., for due diligence or suitability or investment recommendations."

There is also no proximate cause of any damages.  The PPM's informed Plaintiffs that the investment was a long term investment and their only claim for damages is that NYIAX has not yet had an IPO.  The Plaintiffs still hold the shares and therefore any alleged breach of fiduciary duty cannot have proximately caused any damages.

The claim is also barred by the statute of limitations.  Generally, the applicable statute of limitations for breach of fiduciary claims depends upon the substantive remedy sought. *See Loengard v Santa Fe Indus.*, 70 N.Y.2d 262, 267, 519 N.Y.S.2d 801, 514 N.E.2d 113 [1987]. For claims based on fraud, the six-year statute of limitations applies.  *Kaufman v. Cohen*, 307 A.D.2d 113, 118 (1st Dept. 2003).  Thus, the analysis set forth in Section II.D., *supra*, Part One, for why the fraud claims are barred by the statute of limitations is incorporated by reference herein.  *See* Section II.D., *supra*.

Accordingly, Court V for breach of fiduciary duty must be dismissed against WestPark.

### G. COUNT VI & VII MUST BE DISMISSED BECAUSE THERE IS NO CONTRACT BETWEEN PLAINTIFFS AND WESTPARK CAPITAL INC.

Plaintiffs' claim for breach of contract and for breach of the duty of good faith and fair dealing must be dismissed because there was no contract between Plaintiffs and WestPark nor

could there be one. In fact, the only contracts that exist are between the Plaintiffs and NYIAX. *See* CL ¶ 180 and Plaintiffs' Exhibit 5.

In order to prevail on a claim for Breach of Contract, Plaintiffs must prove, (1) the existence of a contract, (2) Plaintiffs' performance or excuse for nonperformance, (3) Defendant's breach, and (4) damages to Plaintiffs. *See Canzona v. Atanasio*, 118 A.D.3d 837, 838 (2nd Dept. 2014).

The complaint fails to allege any contractual duty that was owed by WestPark to Plaintiffs and fails to allege the contract(s) or the contract's provision(s) that have allegedly been breached by WestPark. Defendant was never part of any contractual agreement with the Plaintiffs, and therefore, cannot be held accountable for any breach of contract. Plaintiffs allege that the contract breached by WestPark were the "subscription agreements and shareholder agreements with Defendant…" *See* CL ¶ 180. However, this claim alone justifies the dismissal of the breach of contract allegation against WestPark. Both the Subscription Agreements and the Shareholder Agreements were exclusively between the individual Plaintiffs and NYIAX, Westpark was not a party to these agreements.

"[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing." *See Lee v. Yale Univ.* 624 F. Supp. 3d 120, 137 (D. Conn. 2022) (*quoting Hoskins v. Titan Value Equities Grp., Inc.*, 252 Conn. 789, 793, 749 A.2d 1144 (2000). Here, as explained above, there was no contract between WestPark and the Plaintiffs.

Therefore, Count VI and Count VII must be dismissed against WestPark, as no contract between Defendant and the Plaintiffs ever existed.

**H. COUNTS VIII & X MUST BE DISMISSED BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION FOR VIOLATION OF FINRA RULES**

Plaintiffs cannot maintain claims against WestPark for alleged violations of the NASD/FINRA Rules (specifically, Plaintiffs' claim for failure to supervise, Count VIII, and Plaintiffs' claim for unsuitability, Count X) This is so because, as a matter of well-settled law, there simply is no private right of action for violation of those rules. *See Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292, 295-96 (S.D.N.Y. 2018) (no private right of action for violations of FINRA rules) *see also Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413, 1419 (11th Cir. 1983) ("We have considered all of the appellant's contentions raised on appeal, including his contention that there is a private cause of action under the federal securities laws for violation of both the New York Stock Exchange "know your customer rule" and the National Association of Securities Dealers' "suitability" rule, and find them to be without merit."); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 200 (3d Cir. 1990) (violations of NASD regulations do not give rise to a private right of action). Plaintiffs' attempt to bootstrap WestPark's alleged violations of FINRA rules into actionable civil claims should be denied in full.

These decisions are consistent with Courts in other Districts that have dismissed complaints in their entirety due to there being no private right of action. *See Snapp v. Lincoln Fin. Secs. Corp.*, 2018 WL 1144383, at \*7 (W.D.Va Mar. 2, 2018); *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980); *North v. Smarsh, Inc.* 265 F. Supp. 3d 71 (D.D.C. 2017); and *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth.,* 844 F.3d 414 (4th Cir. 2016).

Moreover, as explained by the Court in *Valelly v. Merrill Lynch, Pierce, Fenner and Smith Inc.*, Plaintiffs cannot assert separate common law negligence claims, because these claims, are derivative and duplicative of Plaintiffs' claims for breach of suitability, and negligent

hiring/supervision. Plaintiffs simply cannot circumvent the lack of a private right of action for violations of industry rules merely by recasting their claims as a violation of a common law duty. *See Valelly v. Merrill Lynch, Pierce, Fenner and Smith Inc.,* 464 F. Supp. 3d 634, 645 (S.D.N.Y 2020).

For these reasons, Plaintiffs do not have standing to bring actions against WestPark for alleged FINRA violations, and these actions should be dismissed.

## I. COUNT IX FOR NEGLIGENT HIRING AND RETENTION MUST BE DISMISSED BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED

Plaintiffs' claim for negligent hiring and retention must be dismissed because the statute of limitations has expired. The statute of limitations on this claim is three years. *See* N.Y.C.P.L.R. 214(5); *see also Wimmer v. Pratt Institute,* 405 N.Y.S. 2d 707, 707 (1978). The dates of the investments at WestPark are listed in paragraph 20 of the Complaint. The last investment at WestPark was in 2018. Therefore, the three-year statute of limitations for negligent hiring and retention expired in 2021.

Courts find that the statute of limitations began to run after the last act, even though the defendant professor had not been terminated from his position. *See Sharon B. v. Reverend S.*, 244 A.D.2d 878, 665 N.Y.S.2d 139, 140 (N.Y. App. Div. 1997) (explaining that a "three-year [s]tatute of [l]imitations applies to a cause of action for negligent retention or supervision" and finding that "defendants failed to establish that the action was commenced more than three years after the last act of alleged sexual abuse.").

The statute of limitations begins to run beginning at the last act towards the plaintiffs, which would have been the last sale of NYIAX at WestPark in 2018. In paragraph 69 of the Complaint, Plaintiffs allege that R. Ainbinder was registered with WestPark until 2019. He was then registered again from November 2022 through January 2023. *See* RJN Ex. B (R. Ainbinder

Broker Check Report, p. 5). No Plaintiff purchased any NYIAX from WestPark after 2018, when the statute of limitations had run. Therefore, Count Nine must be dismissed.

## J. COUNT XI FOR NEGLIGENCE MUST BE DISMISSED BECAUSE THE CLAIM IS TIME-BARRED

Plaintiffs' claim for negligence must be dismissed because the claim is time-barred by the statute of limitations. Under New York law, the statute of limitations for negligence claims is the years. *See Matana v. Merkin*, (2013) 957 F. Supp. 2d 473, 494; *see also* N.Y.C.P.L.R § 214(4). A claim based on a negligence cause of action accrues at the time of the injury. *See Matana* at. 494; *Barrell v. Glen Oaks Vil. Owners, Inc.* (2006) 29 A.D. 3d 612, 613 (2d Dept. 2006); *see also Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 375-76 (S.D.N.Y. 2004) (dismissing malpractice claims and related claims of negligence, breach of contract, and breach of fiduciary duty as time-barred because the claims were filed more than three years after plaintiffs "received and relied on" the legal advice at issue).

Here, Plaintiffs' last investments in NYIAX where WestPark was the placement agent were in January 2018, more than five years before the Plaintiffs filed their FINRA Arbitration in March 2023, and the complaint before this court in November 2023.

Therefore, Count XI must be dismissed against Westpark.

## K. CERTAIN PLAINTIFF'S INVESTMENTS WERE MADE DIRECTLY WITH NYIAX AND WERE APPROPRIATELY DISMISSED BY A FINRA PANEL AND THE DOCTRINE OF *RES JUDICATA* APPLIES TO THOSE INVESTMENTS

Six of the investments made by the Plaintiffs in 2020, 2021, and 2022, referenced in ¶20 of the complaint, must be dismissed based on the doctrine of *res judicata*. The Statement of Claim and the Complaint are virtually identical and are based on the same facts and they claim the same causes of action. "'[T]he doctrine of res judicata, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties ... from relitigating issues that

23

were or could have been raised in that action,'" *Joseph v. Athanasopoulos*, 648 F.3d 58, 59 n.1 (2d Cir. 2011) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010)) (alterations in original). "[R]es judicata ... applies in 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." In re *Adelphia Recovery Trust,* 634 F.3d 678, 694 (2d Cir. 2011) (quoting *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)) (alterations in original).

"[T]he principle of res judicata applies equally when the prior adjudication is an arbitration, to which a plaintiff voluntarily submitted similar claims." *Id.* (citing *Jordan v. Metro. Life Ins. Co.*, 2004 WL 1752822, at *3-4 (S.D.N.Y. Aug. 4, 2004)); (citations omitted). This also applies to decisions issued by Arbitration Panels of the Dispute Resolution Services of the Financial Industry Regulatory Authority ("FINRA"). *See Lobaito v. Chase Bank*, 2012 WL 3104926, *3-4 (S.D.N.Y. July 31, 2012).

In *Lobaito,* the court granted Defendant's motion to dismiss on *res judicata* grounds stating that "It is likewise clear that the FINRA arbitration panel is a 'court of competent jurisdiction' for *res judicata* purposes" and that "[I]t is clear that the FINRA arbitration panel's decision constitutes a final judgment on the merits. *Id.* at 4. Moreover, the doctrine of res judicata applied also to arbitration awards, even if they are not judicially confirmed. *See Spasiano v. Provident Mut. Life Ins. Co.,* 2 A.D.3d 1466, 1467 (4th Dept. Dec. 31, 2003) (quoting *Matter of Pinnacle Envt. Sys.* [*Cannon Bldg. of Troy Assoc.*], 305 A.D.2d 897, 898, 760 N.Y.S.2d 253 [2003]).

"Res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) (citations omitted); *see also Quiroz v. U.S. Bank Nat. Ass'n,* No. 10-CV-2485(KAM)(JMA), 2011 WL 2471733, at *6-7 (E.D.N.Y. May 16, 2011) ("Motions to dismiss invoking res judicata are properly brought under Rule 12(b)(6).") (citation omitted).

This was rightfully acknowledged by the Panel of FINRA Arbitration No. 23-00512, in their October 17, 2023 Order, that stated for the relevant part (*See* RJN Ex. H - Panel's Order dated October 17, 2023):

> As to all Respondents: All claims with securities purchase dates in 2020, 2021, and 2022, are dismissed pursuant to Rule 12504, as the record reveals that the subject securities purchases were made directly through a non-party to this arbitration.[5]

Therefore, for these reasons, Plaintiffs' investments made in 2020, 2021, and 2022 must be dismissed on *res judicata* grounds.

## L. THE COURT SHOULD GRANT THE MOTION TO DISMISS THE CLAIM FOR PUNITIVE DAMAGES

There is no basis for claim for punitive damages and the claim for punitive damages should be dismissed. A claim for punitive damages "must be premised upon assertions of 'morally culpable conduct of a continuous and systematic nature aimed at the public generally.'" *Stack Electric Inc. v. DiNardi Construction Corp.*, 161 A.D.2d 416, 555 N.Y.S.2d 346, 347 (1st Dep't 1990). The only allegations pertaining to fraud are specific statements allegedly made to the plaintiffs, and not any allegations that any allegedly wrongful conduct was continuous, systematic, or aimed at the public. Therefore, the punitive damages claim should be dismissed.

## IV. CONCLUSION

---

[5] Note that the term "Respondents", only refers to WestPark Capital Inc., Robert Ainbinder and Michael Ainbinder, as Defendant NYIAX, Inc. is not subject to FINRA Jurisdiction

Based on the foregoing, WestPark respectfully requests that the Court grant its Motion to Dismiss and dismiss all claims in the Complaint against it.

Dated: February 16, 2024                    **<u>JULIE E. KAMPS, ESQ.</u>**

By:        */s/ Julie E. Kamps*

Julie E. Kamps, Esq.
Attorney for Defendant
WestPark Capital, Inc.