UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
PHIL FELICE, *et al.*,

                       Plaintiffs,

        -v-

WESTPARK CAPITAL, INC., *et al.*,

                       Defendants.
———————————————————————

23-CV-10138 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Defendants WestPark Capital, Inc. ("WestPark") and Robert Ainbinder ("Ainbinder") move for reconsideration of this Court's September 30, 2024 Opinion and Order denying in part their motions to dismiss Plaintiffs' claims. Defendant NYIAX, Inc. ("NYIAX"), joined by WestPark and Ainbinder, also requests reconsideration of the Court's decision to retain supplemental jurisdiction over Plaintiffs' claims against all parties. For the reasons that follow, Defendants' motions and requests are denied.

**I.    Background**

The Court assumes familiarity with the facts of this case, as set forth in its September 30, 2024 Opinion and Order. *See Felice v. Westpark Cap., Inc.*, No. 23-CV-10138, 2024 WL 4349482, at *1 (S.D.N.Y. Sept. 30, 2024).

Ainbinder filed his motion for reconsideration on October 15, 2024 (ECF No. 83) along with a supporting memorandum of law (ECF No. 84 ("RA Mem.")). WestPark filed a motion for reconsideration (ECF No. 85) and supporting memorandum of law (ECF No 85-1 ("WP Mem.")) on the same day. Plaintiffs opposed both motions on October 29, 2024. (ECF No. 86 ("Opp.").) WestPark replied in support of its motion on November 6, 2024 (ECF No. 89 ("WP

Reply"), and Ainbinder replied in support of his motion on November 7, 2024 (ECF No. 92 ("RA Reply")).

On March 17, 2025, NYIAX filed a letter requesting that the Court exercise its discretion to dismiss Plaintiffs' claims against NYIAX due to "limited federal question issues" remaining in the case. (ECF No. 103 at 2.) WestPark followed with its own letter requesting the same relief on March 18, 2025. (ECF No. 105.) Plaintiffs opposed both letters on March 19, 2025. (ECF No. 106.) Ainbinder then filed his own letter joining NYIAX's request on March 20, 2025. (ECF No. 107.) WestPark replied in support of its request on March 24, 2025 (ECF No. 110), and Plaintiffs responded to WestPark's second letter on March 26, 2025 (ECF No. 111).

## II.   Discussion

### A.   Reconsideration

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (quotation marks omitted). To prevail, the movant must demonstrate either "(1) an intervening change in controlling law; (2) the availability of new evidence[;] or (3) a need to correct a clear error or prevent manifest injustice. *Id.* at 696 (citing *Bergerson v. N.Y. State Off. of Mental Health, Central N.Y. Psychiatric*, 652 F.3d 277 (2d Cir. 2011)); *see also Cioce v. County of Westchester*, 128 Fed. App'x 181, 185 (2d Cir. 2005) (summary order) ("Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). "Importantly, in reviewing motions for reconsideration courts will not tolerate efforts to obtain a second bite at the apple." *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 581 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) (summary order) (cleaned up).

Defendants' first argument is that the Court erred in differentiating Vincent Ruta from Dawn Felice, Linda Spivack, and Kathleen Spivack. (*See* RA Mem. at 6; WP Mem. at 8-9.) Defendants acknowledge, however, that the Felice and Spivack families maintained joint investment accounts and collaboratively invested their assets, unlike Mr. Ruta and his nephew-in-law, Mr. Held. (WP Reply at 5; *see also* ECF No. 1 ("Compl.") ¶¶ 41, 52.) And, as married couples with shared accounts often do, the Felices and the Spivacks "together . . . executed subscription agreements" "[i]n reliance on the representations made by [Ainbinder and his brother]." (Opp. at 7 (quoting Compl. ¶¶ 101, 102, 104).) Mr. Felice also communicated with Ainbinder "on behalf of Plaintiffs," including his wife and the Spivacks. *Felice*, 2024 WL 4349482 at *2 (quoting Compl. ¶ 126.) Under New York law, "indirect communication can establish a fraud claim, so long as the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it." *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 828 (2016). And, while Rule 9 of the Federal Rules of Civil Procedure "demands specificity" when pleading fraud, "it does not elevate the standard of certainty that a pleading must attain beyond the ordinary level of plausibility." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 88 (2d Cir. 2017). It is certainly plausible that Ainbinder intended to defraud Dawn Felice, Linda Spivack, and Kathleen Spivack when he allegedly communicated false information to their husbands in order to induce investments in jointly owned bank accounts.

Defendants' second argument, made only by WestPark, is that the Court erred in applying the doctrine of ratification to Ainbinder's alleged misconduct between 2019 and 2022, when he was not a registered agent with WestPark. (WP Mem. at 4.) WestPark cites *Prisco v. New York*, 804 F. Supp. 518, 524 (S.D.N.Y. 1992), for the proposition that "[i]naction alone is

not ratification unless it is coupled with the acceptance of benefits with knowledge of the unauthorized acts." (WP Mem. at 5.)[1] Here, WestPark rehired Ainbinder after 2022 and used Ainbinder's ongoing relationship with the Spivacks to solicit new customer accounts and investments at WestPark. (*See, e.g.*, Compl. ¶ 140.) In doing so, Ainbinder represented to the Spivacks that WestPark was still managing their investments in NYIAX, and he repeated his allegedly fraudulent promises of an impending IPO. (*Id.*¶ 143.) Had Ainbinder not maintained and deepened his relationship with the Spivacks between 2019 and 2022, WestPark could not have leveraged that relationship for financial gain after 2022. It is not implausible to infer that WestPark, having employed Ainbinder and benefitted from Ainbinder's connection to NYIAX before 2019 and after 2022, was aware of and approved of his closely related conduct between 2019 and 2022.

Finally, WestPark reiterates its argument that the prior FINRA panel ruling in its favor should have preclusive effect here. The Court already addressed and distinguished *Farber v. Goldman Sachs Group, Inc.*, No. 10-CV-873, 2011 WL 666396, at *4 (S.D.N.Y. Feb. 16, 2011), in its opinion rejecting WestPark's motion to dismiss. *See Felice*, 2024 WL 4349482, at *3-4. As FINRA's rules do not self-evidently support WestPark's interpretation and *Farber* appears to be the only other federal case addressing this issue, the Court declines to reconsider its decision that it lacks sufficient information to grant dismissal based on res judicata at this stage. At summary judgment, WestPark is free to present further evidence that it believes substantiates its preferred interpretation of the FINRA decision.

---

[1] In fact, WestPark quotes *Prisco* for this proposition, but the Court was unable to find the quoted material in that case or any other. (*Cf.* WP Mem. at 5.) WestPark also, confusingly, argues that "[b]enefit is not a necessary element of a fraud claim under New York law." (WP Mem. at 6.) The Court agrees. Benefit is, however, an element of New York ratification doctrine.

B.    **Jurisdictional Objections**

NYIAX, WestPark, and Ainbinder all request that the Court dismiss Plaintiffs' claims against them because only a small portion of Plaintiffs' original federal claims survived dismissal. Because all of Plaintiffs' claims "derive from a common nucleus of operative fact"—the multi-year fraudulent solicitation of investments in NYIAX by the Ainbinder and his brother, who were employed for most of that period by WestPark—the Court's assertion of pendent jurisdiction over Plaintiffs' remaining claims is entirely proper. *Eng v. City of New York*, 715 F. App'x 49, 54 (2d Cir. 2017) (summary order) (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011)). Moreover, even if the Court had dismissed all of Plaintiffs' federal claims, it would still retain discretion to exercise supplemental jurisdiction in recognition of Plaintiffs' and the Court's "substantial expenditure in time, effort, and money in preparing the dependent claims." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996) (quotation marks omitted). The Court also notes that Defendants made these requests nearly six months after the Court's denial of their motions to dismiss, and after the parties invested further time and money in the discovery process. (*See, e.g.*, ECF No. 101.)

NYIAX also argues that the Court should dismiss all of Plaintiffs' claims as to NYIAX that the Court dismissed as to Ainbinder, as NYIAX's "liability, if any under the federal question claims, is dependent upon its employer relationship with Robert Ainbinder," and "[t]here are no separate factual or legal grounds for relief alleged against NYIAX that are not alleged against Robert Ainbinder except for negligent hiring." (ECF No. 103 at 1.) However, only "non-dispositive matters may be brought by letter[]motion" unless otherwise authorized by the Court. Loc. Civ. R. 7.1(e). NYIAX's request is therefore denied, without prejudice to refiling, as an improperly filed motion. *See* Loc. Civ. R. 7.1(a) (requiring a party to file *inter alia* "[a] notice of motion . . . which must specify the applicable rules or statutes pursuant to which the motion is

brought, and must specify the relief sought by the motion," and "[a] memorandum of law, setting forth the cases and other authorities relied on in support of the motion"); *see also In re 2300 Xtra Wholesalers, Inc.*, No. 10-CV-7292, 2011 WL 672353, at *1 (S.D.N.Y. Feb. 4, 2011) (noting that failure to comply with Rule 7.1 "alone is sufficient to warrant dismissal of the motion"). While the Court ordinarily prefers to consider arguments on the merits, disposing of Plaintiffs' claims against NYIAX based on two brief letters would deny Plaintiffs a full and fair opportunity to address NYIAX's arguments. *See* Indiv. Rs. and Pracs. in Civ. Cases 1.A (requiring that letter motions and responses be no longer than five pages, and that responses be filed within two business days). NYIAX is free to file a motion for judgment on the pleadings or for summary judgment if it wishes to raise these arguments through a proper procedural vehicle.

### III. Conclusion

For the foregoing reasons, Defendants' motions for reconsideration and requests that the Court dismiss various claims for lack of subject matter jurisdiction are DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 83, 85, and 103.

SO ORDERED.

Dated: April 14, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge